Thank you. May it please the Court, Counsel Brandon Williams on behalf of Appellant Igor Zavalin and I'd like to reserve three minutes of rebuttal time, please. Now there are two issues in this case and I think the lead issue, well the broader issue, is whether a condition in the residual functional capacity, the RFC, limiting the claimant to simple routine work is compatible with occupations requiring Reasoning Level 3 under the Dictionary of Occupational Titles, which I'll refer to as the DOT, and so forth. Now, just starting with the plain language, I think the plain language that defines Reasoning Level 3 under the DOT is incompatible with a simple routine RFC limitation, and I think the case that I think what spells that out best is the Adams case that I cited on page 14 of the opening brief, and so quickly, Reasoning Level 3 under the DOT requires the ability to apply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations. As explained in the Adams case, the ability to deal with problems involving multiple variables may be inconsistent with simple repetitive tasks or simple routine. Sometimes I'll phrase simple repetitive or simple routine, I'm using them interchangeably, and may be inconsistent with the simple routine tasks because the multiplicity of the variables can complicate the simplicity of the tasks, and additionally, it may be difficult for a person limited to simple repetitive tasks to instructions in diagrammatic form as such instructions can be abstract. I want to start with the second component discussed in Adams, and that's that Reasoning Level 3 demands a certain level, demands that the worker engage in some level of abstraction, and that ties in with what the point I make in the reply brief where the, which is in reply to the Commissioner's argument that a person's education level informs their reasoning level ability under the DOT, and... Let me ask you this, Counselor, because courts have gone both ways on this issue, whether simple routine tasks is consistent with Reasoning Level 3. What makes the line of cases holding that it's inconsistent with Reasoning Level 3 better reasoned or more correct in your view? What's your best argument? Is it that Reasoning Level 3 incorporates variables from standardized routine, and so in that sense it's inconsistent with the plain language of simple routine? Is that your best argument? I'm relying on the plain language of Reasoning Level 3 vis-a-vis the plain language of Reasoning Level 2, and I think taking the definitions of both of those into consideration demonstrates that Reasoning Level 3 is incompatible with simple detailed but uninvolved written or oral instructions dealing with few concrete variables. Now the difference between that and Reasoning Level 3 is with Reasoning Level 2 we have few concrete variables, and Reasoning Level 3 we have several concrete variables, and Reasoning Level 2 signifies that the ability to carry out detailed but uninvolved written or oral instructions, and Reasoning Level 3 is to carry out instructions without qualification furnished in written, oral, or diagrammatic form. Now taking those two definitions side by side, a simple limitation to simple routine tasks simply is incompatible with Reasoning Level 3 because it pretty much it fits, it squares with Reasoning Level 2 very well, but Reasoning Level 3 to carry out instructions without qualification, Reasoning Level 2 to carry out detailed but uninvolved instructions. The simple routine tasks does certainly could encompass detailed but uninvolved instructions, but instructions in general, no, otherwise they wouldn't be limited to simple routine tasks. And furnished in written, oral, or diagrammatic form, there you've got a very specific, a very specific definition of how the worker is required to present something, whereas Reasoning Level 2, in written or oral instructions. And then several concrete variables in Reasoning Level 3 versus few concrete variables in Reasoning Level 2, just on its face, simple routine tasks connotes working with few concrete variables, not working with several concrete variables. Now, the commissioner asserts that a person's educational background informs their reasoning level, their ability to reason under the DOT. And that argument's not without appeal, certainly, and I think on its face it kind of makes sense, but under the DOT it's simply not the case. And in the reply brief, in response to the commissioner's argument, I set forth a rather detailed explanation why, but in short, the DOT has SVPs, which is the time it takes to learn a job. And Reasoning Level gauges the minimal ability a worker needs to complete the job's tasks themselves. Now, the commissioner conflates the two, and under the DOT, the commissioner's regulations do not correlate a reasoning level with a skill level of work. SVP, the time it takes to learn a job, correlates to skill level. Reasoning level is, if you can consider it this way, exists independently of your level of education. In fact, the DOT, in describing the general educational development component, which muddies the water further because the DOT adds education in there, but parsing it out, especially under the case law discussed in the reply brief, maybe consider this. A person can have advanced degrees that could certainly advance their reasoning ability. You could also have somebody with advanced degrees that maintains a less advanced reasoning ability. And I think under the DOT, reasoning ability stands apart from educational background and is more inherent. And in fact, if you look at the Reasoning Levels 1 through 3, it talks about applied common sense understanding. And I think that's what Reasoning Level captures, is a common sense understanding of capacity to reason. If we agree with you that there's an apparent conflict between simple routine work and Reasoning Level 3, would it be appropriate then for us to go further and examine the record in terms of plaintiff's abilities to determine whether the error is harmless? Because if there's an error, or if there's an apparent conflict, then what the ALJ, as I understand it, is supposed to do is to inquire of the vocational expert to explain why, despite the apparent conflict, Mr. Zavalin is still able to perform the jobs identified, being a cashier and video surveillance monitor. Can we examine the record to determine whether the record demonstrates that he can, in fact, perform the two tasks? We can look at what a Cashier 2 level is supposed to be able to do and look at the Description of Surveillance System Monitor and make our own determination? I'm glad you asked that, Your Honor. Because, yes, this Court in fact can examine the record insofar as to determine whether the error was harmless. And that point is vital in all of this because, first, it demonstrates that finding that, as a matter of law, a simple routine RFC condition is incompatible with Reasoning Level 3 work does not create a great burden on the Commissioner at all. All that would be required to overcome this hurdle is for the vocational expert, the VE, to explain in their testimony before the ALJ that, even though there's a simple routine task limitation here, and this work, some particular job or jobs are Reasoning Level 3, I know from personal experience that the claimant's particular qualities are sufficient to satisfy the Reasoning Level 3 job requirement. And in that respect, the Court would be invited to if it was an issue on appeal, the Court would be invited to delve into the record and examine the claimant's specific limitations, what the doctor's... As opposed to remanding? Oh, I'm sorry. Is that what you're suggesting? If we agree with you on the legal question, are you suggesting then we should make the determination? I understand, Your Honor. In this case, this case would not require... does not call for a remand because the vocational expert did not explain why Mr. Zavalin was able to perform the representative occupations. Well, so shouldn't we remand? If we agree with you on the apparent conflict, shouldn't we remand for the ALJ to ask why, despite the apparent conflict, he is still able or not able to perform the identified tasks? We're not vocational experts. I understand. So that's what I'm saying, is do we remand if we agree with you for further proceeding below, or do we examine the record and look at the fact that the plaintiff was very successful at math, the fact that he can surf the internet, the fact that he can use computer games, and then reach our own conclusion? Would that be inappropriate? This case, forgive me if I'm contradicting what I just said. Not at all. This is an important point. Okay. Yes, Your Honor. This case would call for a remand with respect to the question of what jobs can he perform under this RFC, this residual functional capacity. Did you want to reserve some time? Yes, unless the Court has any immediate questions. Okay. All right. Counsel? Is this good? Yes. All right. Good morning. May it please the Court and Counsel, my name is Terry Shea. I'm appearing for the Commissioner of Social Security in this case. As counsel for the appellant states, there are two big issues. There's basically the broader issue of whether the Court should create a per se rule, and basically have the ALJs from here on forward act as vocational experts by checking the status or checking the information the VE gives them, even though the VE has said that the testimony is compatible with the DOT, and there's no apparent discrepancy. Okay. That's one issue. Many courts, as you noticed across the country, have felt in both directions, and many of the cases that said it wasn't compatible were cases in which the claimant, the appellant, had additional deficiencies in they were not able to communicate with the general public or things of that nature. We are absolutely, we don't agree, the agency does not agree, that the reasoning levels are required, are minimum requirements for these jobs. The minimum requirements for the jobs are the SVP level and the job tasks itself. When you get down below that into the area of occupational guidance, these are not minimum requirements that need to be included in the RFC. These are simply things that will help this individual, and it is supposed to be an individual assessment, do the jobs that have been identified. And plain, you know. How is that different? How is it different, a job qualification versus skills that will help an individual do the job? Well, because when you look at the job tasks, they're simply, they simply don't require the items in the reasoning level. I mean, you, and the vocational expert is presumed to have the knowledge of the job market that says this individual with this residual functional capacity can do this job without going, you know, below that and saying each individual item here in the occupational guidelines is met because of this or is not met because of this or it's not necessary. So how do we treat these other indicia, these other indications about the reasoning level? How do we, are they just sort of advisory? What do we do with them? Well, they are advisory. They are guidance. Again, they're not minimal, you know, tie skill levels strictly to education. As it explains in the other regulations, I can't cite it off the top of my head, but basically when you're looking at skills and when the vocational expert and the ALJ are determining what a person can do, they don't just look at education. They look at what they've done in the past. And in this case, because this is a young man, he's basically just gotten out of high school, the reasonable thing to look at would be his education and how he did there. He was in, he came to the United States from Russia when he was 13 years old. He has some kind of difficulty which has been variously been described as cerebral palsy or some similar problem that occurred because of a birth defect or when he was born a problem with his birth. But basically that affects him physically. And even the high school record says that, you know, he plays football, he plays volleyball, he plays basketball, he engages in team sports. No one, there's been no suggestion that he's engaged in team sports and he's given special accommodations to be able to do that. The transcript of his entire high school record shows that for the first two years, most of his classes were designated as IEP classes or special education classes. But when he moved to the junior and senior year, most of the classes were not special education. Junior year, there was But were there special accommodations made? Did he have an IEP in place? He did say that he got special help. And Miss Merrill, who worked with him just for the last three months of his senior year, said that he would have gotten special help. But his own basically what the doctors have said who have looked at him, saying like, yeah, he has, he does, he has very few physical problems. He has right-sided weakness and that's demonstrated. He doesn't have met, he has learning disability, which is unspecified, but he is still able to communicate. He is still able to learn. He would probably do best learning with somebody showing him how to do it. And this is compatible with simple routine tasks. But can I interrupt? Forgive me for interrupting. But right there, there seems to be a cognitive processing disorder of some severity. And then there's this language delay that was quite pronounced in that vocational expert ultimate testimony. In fact, pivotal. And then there's the overlay that this that English is his second language. That each. That English is his second language. Absolutely. It's hard for us to parse out, you see. That's why this becomes so critical. And you seem to be treating them as one lump when we're talking about an individual's ability to reason and separately to deal with the public. Did you want to comment on how we should approach that? Well, I would suggest that you would approach it by looking at the record as a whole and seeing what the qualified medical professionals have actually said about his problems with communication and his physical problems. And basically they're saying he's able to communicate in English. His language is halting, but it's effective. But that's why this question seems pivotal. The first hypothetical, of course, resulted in one answer about his ability to being gainfully employed. And the second hypothetical resulted in a different answer that was conditioned upon as long as there wasn't too long of a latency in terms of being able to communicate. So the halting, I think it was first described as halting, but ultimately effective speech. And then the pivotal question for the VE really had to do with it was dependent upon how long that delay was going to be. Well, as I recall, the first question was simply he had problems with communication. The second question had halting but effective. And the VE did say it depends on whether or not there's too much of a latency. But he still has the potential to do that work. If the court feels that that should be further explored as to what you mean by what's too much of a latency, then yes, the appropriate action to take would be to remand it for further proceedings. But I can invite you to tell me if that's a concern that we have, is there some place in the record where I could find that answer, or do you think we would need to remand? Well, I think that you can accept the VE's testimony as is, because there isn't anything other than his testimony. All right. Thank you. Is there something else you want me to discuss? Counsel, I've got a question. Judge Gould, I have a question for you, and it relates to some things that Appellant had argued. My question is this. Can you put some content to the term concrete variable? There is what are some specific examples of concrete variables in jobs, which, as I understood Appellant's argument, at reasoning level three, someone has to be able to juggle several of those. Well, few variables and several variables are very close in numerical numbers. And if you're looking at the jobs. But what I'm asking what I'm asking you to do, please, is give me a specific example of a concrete variable in that particular job. In the surveillance systems monitor job, concrete variables would be how you react to the scenes you see on the computers you're monitoring. If it's a disturbance, you might need to call the police. If it's not a disturbance, you might not need to do that. Those are two concrete ways to go, depending on what you're saying. But isn't that one of those things that you're going? Please go right ahead. Because let's say you're watching this monitor and you see a suspicious character and you have to decide, Judge Gould, do you judge police? I'm sorry, I made you this character approach. That's OK. Thanks. You have to decide. Do you call the police or do you not call the police? Do you call someone and warn them? In other words, can someone who only does simple routine tasks do that? Well, especially in today's society, probably yes. If we're talking simply about a profiling type response, it might be a little different. But in most of these jobs, you're talking about specific actions or disturbances. Somebody who looks suspicious is not going to be a disturbance. In most, I can't think of any situation where somebody looking suspicious would be something that would require that the monitor call the police. There has to be. Let's say let's say the suspicious character is wearing a big trench coat and the monitor sees the suspicious character walk through a door that leads into a some sort of access hallway that's off screen, which. What does what does the monitor do? What are the choices for the monitor then? Well, let's see. It doesn't see what the person is doing in the hallway after going through the door. OK. So are we assuming, Your Honor, that this is not a limited access hallway? They're just supposed to have a special pass or a key to get there? We're just in a hallway that someone can go in. I know I know there was an event like this in one of the one of the the mall shootings in the past year or two where where the person was seen leaving the retail area and going into a hallway. Would that be enough? Is that what you're asking, Your Honor? I'm asking you, does does the surveillance monitor have to make a decision at that point whether to call some store guard guard or call the police or call someone else? You know, how can someone how can someone do that if they're limited to simple routine tasks? Well, it seems like a simple routine task to observe the person going there to observe that it's access that may lead to other places where he's obviously not supposed to go. The simple routine part might be watching the monitor and picking up the phone, but the not so so routine part, I think, is the reasoning about making the judgment call. Is this something to be concerned about? That's the level of complication I'm worried about. And then the other part of that, of course, is the halting speech if there really was an emergency. But but just please for now, please stay focused on Judge Gould's question about the seeing this whatever event is occurring on the on the screen and needing to make the decision, the judgment call. So a simple routine task to me seems to be watching the screen and being able to and routine. But there's this other level of reasoning that goes along with it, isn't there? I think that's what Judge Gould's getting at. Well, I think the question in my mind is, you know, whether the ALJ should be asking the vocational expert who says he can be a monitor questions like that. Right. As to how can he do this job or that job? Well, generally, what the vocational expert tells the judge is based on that hypothetical, this person can do the required tasks. And you're asking me, should the ALJ be required to pull more information out of the vocational expert? It's exactly what are the duties, exactly how much judgment is required. That hasn't been the rule. It has not been a black letter rule. But my response would be that it would not be a difficult for a person who has even halting speech, but as effective speech would be alerting to someone in another part of the building. As soon as they pick up the phone, the person on the other end is going to know there's a potential problem and they're going to be able to wait for the effective communication. And if they were not able to communicate for any reason, then they would follow up. You know, given the way that this young man has progressed through school, he does, you know, simple routine tasks are based mostly on his language difficulty, which has been shown to improve. His teacher or his counselor, Mr. Scott, who prepared his IEP in the 12th grade, basically said his advances in reading have been phenomenal. There's no reason to expect that he will not be able to continue to improve, as this repro policy is affecting him physically, not mentally. And what would be an example of a concrete variable in the job of cashier two? Well, a concrete variable would be, can you do the individual tasks? Can you use the adding machine or the cashier to come up with the right amount? Can you then tell the client how much or the customer how much it is? Can you accept their money and give them back the change? Those are concrete variables, but they're all pretty simple and routine. It's hard to think of a situation. Well, the reasoning levels, both two and three, talk about concrete variables in terms of concrete variables from standardized situations. That's where the judgment comes in. It may be routine to ring up purchases, but then if there's an inconsistency between the cash in the drawer and the, what do you call those, the tape, the ability to reconcile that and to sort that out, then it varies from the standard situation. So that does seem to me to be different than simple and routine tasks, which suggest more standardized situations. And as I recall, and correct me if I'm wrong, even though the plaintiff has succeeded in some areas, there was also evidence that he had difficulty learning and had problems concentrating, correct? That's in the record? Well, there was a dispute about that. I mean, he did say that he had some problems concentrating, and the ALJ pointed out, well, then you got, you managed to get good grades anyway, which would, which would tend to show that the concentration difficulty was not that, as alleged. But if I can just back up a second for one thing you say about concrete variables arising from standardized situations, I think that they're not saying it's in addition to standardized situations. They say, okay, there's a standard situation, and it's going to have variables. It's going to have one, two, three variables. So it's not additional situations. That would be in the job task description itself, which is above this general occupational guidance section of the DOT. You're over your time. Oh, okay. Sorry. Sorry. It goes down and it starts going back up. So that's two minutes extra, actually. Okay. I'm sorry. Not at all. No more questions, Peter? Okay. No, thank you. Thank you, counsel. No, I appreciate your answers. Thank you. You have a minute left, counsel. Go right ahead. Thank you, Your Honor. Just a few points very briefly. I didn't, you visited the other issue on appeal, and I just didn't, I didn't bring it up in my opening, which is the latency issue with the speech. I just wanted to quickly say that regarding issue number two, the ALJ failed to account for the vocational expert's testimony that he could perform these occupations so long as there wasn't too much latency. Now, moving on, with respect to issue number one, the commissioner revisits Mr. Zavalin's educational background numerous times, and I want to stress that the V.E. is instructed below to consider someone of the claimant's age, educational background, and the RFC to determine what jobs they can do. And so the V.E. indeed considers their educational background, and it's just the problem in this case was the V.E. testified that the claimant, that Mr. Zavalin could perform jobs that were my position as per se incompatible with the simple routine tasks he was limited to. And regarding Judge Gould's questions, and I think what cannot be, I see my time's up, what cannot be overlooked is that the ALJ should be asking the V.E. clarifying questions to give integrity to this process, and if the court has no further questions, thank you for your time. Thank you, counsel. Thank you both. That's the last of our arguments today. We'll be adjourned.
judges: Gould, Christen, Nguyen